STOKES, Appellant,

v.

STOKES et al., Appellees.

[Cite as *Stokes v. Stokes* (1994), 98 Ohio App.3d 238.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 66295.

Decided Oct. 31, 1994.

*John V. Heutsche Co., L.P.A.,* and *John V. Heutsche,* for appellant.

*Herbert Palkovitz,* for appellees.

*Carl B. Stokes, pro se.*

SPELLACY, Presiding Judge.

Plaintiff-appellant Raija Stokes (wife) appeals a judgment awarding the marital home to defendant-appellee Carl Stokes (husband) based on an antenuptial agreement. Wife raises two assignments of error:

"I. The trial court erred, as a matter of law, in failing to apply Ohio case law to determine that the parties' agreement was invalid and in divesting the plaintiff of any interest in the marital real estate.

"II. The trial court erred, as a matter of law, when it sua sponte amended the parties' pleadings and changed the previously pleaded date of marriage.

I

After the trial court awarded wife and husband a divorce while reserving jurisdiction to determine wife's interest in the marital home, husband moved to establish sole ownership of the marital home based on a September 12, 1980 agreement. Although the parties had used January 2, 1980 as the date of

marriage throughout the proceedings, husband argued that the September 12, 1980 agreement was an antenuptial agreement and provided a marriage certificate showing January 2, 1981 as the date of marriage, not January 2, 1980. The September 12, 1980 agreement provides:

"THIS AGREEMENT made and entered into this 12th day of September, 1980, by and between Raija Kostadinov Stokes, residing at 315 West 70th Street, New York, New York 10023 and Carl B. Stokes, residing at 315 West 70th Street, New York, New York 10023;

## WITNESSETH:

"WHEREAS, the parties desire to fix and determine by this agreement the rights and claims that will accrue to each of them in the estate and property of the other and to accept the provisions of this agreement in lieu of and in full discharge, settlement and satisfaction of all such rights and claims;

"NOW, THEREFORE, in consideration of the premises and in further consideration of the mutual covenants and agreements hereinafter contained, the parties agree as follows:

"1. Each party hereby waives, releases and relinquishes any and all claims and rights of every kind, nature or description, which he or she may acquire by reason of the marriage in the other party's property or estate under the present or future laws of the State of New York or any other jurisdiction, including:

"(a) The right to elect to take against any present or future will or codicil of the other party;

"(b) The right to take his or her intestate share in the other party's estate;

"(c) The right, if any, to act as executor, executrix, administrator or administratrix of the other party's estate;

"(d) Any right of dower or curtesy;

"(e) Any right to assert any claim arising from the community property laws of any state.

"This provision is intended to and shall serve as a waiver and release of each party's right of election pursuant to Section 5–1.1 of the Estates, Powers and Trusts Law of the State of New York, and any law amendatory thereof or supplemental or similar thereto, in New York or in any other jurisdiction.

"2. Nothing herein contained shall be deemed to constitute a waiver by either party of any bequest that the other party may choose to make to him or to her by will or codicil. However, the parties acknowledge that no promises of any kind have been made by either of them to the other with respect to any such bequest.

"3. Each party acknowledges that he or she is fully acquainted with the assets, resources, liabilities and income of the other; that each party understands that by entering into this agreement, he or she is waiving substantial rights to which he or she would otherwise be entitled in the estate of the other if the other party died intestate or if he or she elected to take against the will of the other party pursuant to statute; that each party has answered all questions which the other party has asked concerning his or her income and assets; that each party has carefully considered all of the facts and circumstances and desires to enter into this agreement in full knowledge of the financial arrangements made herein; that each party is entering into this agreement freely, voluntarily and with full knowledge of the facts.

"4. This agreement contains the entire understanding of the parties. There are no representations, warranties or promises other than those expressly set forth herein.

"5. This agreement shall inure to the benefit of, and shall be binding upon, the heirs, executors and administrators of the parties.

"IN WITNESS WHEREOF, the parties hereby have hereunto set their hands and seals this 12th day of September, 1980.

"(s) RAIJA KOSTADINOV STOKES
"Raija Kostadinov Stokes

"(s) CARL B. STOKES
"Carl B. Stokes"

The trial court modified the date of marriage from January 2, 1980, to January 2, 1981, and awarded sole ownership of the marital home to husband, finding that wife had waived her interest in the marital home by executing the September 12, 1980 agreement.

II

In her first assignment of error, wife contends the trial court erred when it found the September 12, 1980, agreement precluded her from having any interest in the marital home.

An antenuptial agreement that discusses only division of assets upon the death of a spouse and makes no reference to divorce is inapplicable to a divorce proceeding. *Devault v. Devault* (1992), 80 Ohio App.3d 341, 609 N.E.2d 214; see, also, *Fletcher v. Fletcher* (1994), 68 Ohio St.3d 464, 468–469, 628 N.E.2d 1343, 1347–1348 (distinguishing the antenuptial agreement before it from *Devault* because it discussed future support and division of property and the wife

acknowledged being told that the agreement applied in the event the marriage was terminated).

Reviewing the September 12, 1980 agreement, we find it inapplicable to a divorce proceeding. The agreement is testamentary and makes no reference to division of assets upon divorce. For example, in discussing the disclosure of assets, the parties state they understand that they are waiving rights to which they "would otherwise be entitled in the estate of the other if the other party died intestate or if he or she elected to take against the will of the other party pursuant to statute." Husband argues that the following clause encompasses divorce: "Each party hereby waives, releases and relinquishes any and all claims and rights of every kind, nature or description, which he or she may acquire by reason of the marriage in the other party's property or estate * * *." This clause, however, goes on to list only testamentary rights.

Accordingly, wife's first assignment of error is well taken.

### III

In her second assignment of error, wife contends that the trial court erred when it modified the date of marriage from January 2, 1980 to January 2, 1981. Based on our resolution of wife's first assignment of error, we decline to address this assignment of error. See App.R. 12(A).

Judgment reversed and cause remanded for further proceedings.

*Judgment reversed*
*and cause remanded.*

MATIA and NUGENT, JJ., concur.